IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01167-WYD-MEH

PURZEL VIDEO GmbH,

    Plaintiff,

v.

BENITO SMOAK,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff has filed a Motion and Memorandum for Default Judgment against Defendant Benito Smoak [filed May 30, 2014; docket #69]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to me for a Report and Recommendation. The matter is briefed to the extent required by court rules and the prevailing law, and the Court finds that oral argument is not necessary for the adjudication of the motion. Based upon the record and for the reasons that follow, the Court recommends that the District Court **grant in part and deny in part** the motion as set forth herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the

**BACKGROUND**

In this case, Plaintiff's allegations involve a complicated technical process used to download copyrighted works (here, motion pictures) through the BitTorrent program; therefore, this Court finds it necessary first to explain how BitTorrent works, then to note its findings of fact in this case.

**I.     BitTorrent Protocol**

Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program. This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates. *Id.* at *1-*3. First, the vocabulary used in the technology:

> *Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.
>
> *IP Address:* The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File:* A collection of related data packets treated as a unit.
>
> *Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.
>
> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that

---

aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

websites use to communicate with web browsers.

*BitTorrent:* A peer-to-peer file sharing protocol.

*Peer:* A BitTorrent user.

*Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).

*Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.

*Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.

*Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

*Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.

*Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted). Judge Ludington proceeds to

describe the protocol and how BitTorrent works:

BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."

. . .

3

> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."
>
> Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:
>
> 1. Install BitTorrent (or have done so already).
> 2. Surf the web.
> 3. Click on a link to a *.torrent* file.
> 4. Select where to save the file locally, or select a partial download to resume.
> 5. Wait for download to complete.
> 6. Tell downloader to exit (it keeps uploading until this happens).
>
> BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."
>
> "In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."
>
> In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:
>
> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *2-*3 (citations omitted).

**II.     Findings of Fact**

1.      Plaintiff is the copyright owner of a motion picture entitled "Creampie Young Girls 1" (the "copyrighted film").  Docket #21-2.  The film was registered on September 10, 2012 under registration number PAU003631765. *Id*.

2.      Plaintiff has not authorized the motion picture to be copied or distributed on BitTorrent. Declaration of Matthias Schroeder Padewet, May 2, 2013 ("Padewet Declaration"), ¶ 7, docket #5.

3.      Plaintiff's investigator, Copyright Defenders, Inc., used the BitTorrent file distribution network to download its motion picture, identified by file hash number 840DCF35EA1BOEA81724D0385604461FDF532606 ("Hash 840D"), from IP address 71.56.192.189.  *Id*. at  ¶ 23; Docket #21-3.  As set forth in more detail below, IP address 71.56.192.189 has been identified by Internet Service Provider ("ISP"), Century Link, as belonging to Defendant Smoak.  Dockets #21, ¶ 20, 26;  #21-1.

4.      Copyright Defenders used the search function of the BitTorrent protocol to look for network users who were offering for distribution audiovisual files that were labeled with the names of Plaintiff s copyrighted Motion Picture. Copyright Defenders then conducted a download of the respective content and a careful and thorough review of that data . The Hash 840D was extracted from the original torrent file as soon as the content had been verified as a valid copy of Plaintiff s copyrighted Motion Picture.

5.      Copyright Defenders started searching for individuals making the content identified by the hash value available to the public. When a network user was located who was making that content available for distribution, Copyright Defenders downloaded a part of that file and stored other specific information in order to confirm that copying was occurring and to identify the copier by the

unique IP address assigned to that individual by his/her ISP on the date and at the time of the copying activity.

6. Copyright Defenders identified Defendant Smoak as follows: its software is connected to the "Creampie Young Girls 1" file, an illegal version of the Plaintiff's copyrighted film. All individuals connected to the file ("users") were investigated through downloading a part of the file placed on their computers. Evidence of these connections are saved on Copyright Defenders' server.

7. Copyright Defenders then obtained the IP address of each user offering the file for download. It also downloaded or otherwise collected publicly available information about the user, which is designed to help Plaintiff identify the user. Among other things, the investigator downloaded or recorded for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of copying; (c) the ISP for each user; and, in some cases, (d) the video file's metadata (digital data about the file) such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file, (e) the BitTorrent client application used by each user, (f) the global unique identifier for each file downloaded by each user, and (g) the location of most users (by state) at the time of download as determined by geolocation technology. Copyright Defenders then created evidence logs for each user and stored the information in a database.

8. Copyright Defenders has confirmed that the digital audiovisual files downloaded by Copyright Defenders are actual copies of the Plaintiff's copyrighted film. Because it is possible for digital files to be mislabeled or corrupted, Copyright Defenders does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and

the motion picture itself.

9.      As to Plaintiff's copyrighted film, the staff at Copyright Defenders has watched a copy of the copyrighted film provided by Plaintiff. The downloaded files have been carefully reviewed and compared by a visual comparison with the original motion picture. Copyright Defenders confirms that the downloaded files contain a substantial portion of the Plaintiff's copyrighted film.

10.     Plaintiff's evidence reveals that the IP Address 71.56.192.189, identified as belonging to Defendant Benito Smoak, connected to the invalid file containing Plaintiff's copyrighted film several times on February 5, 2013 for a total of 2,178 seconds. *See* Logged Evidences of IP Address 71.56.192.189, docket #21-3.

11.     Defendant Benito Smoak is an individual residing at 135 South Kendall Street, Lakewood, Colorado 80226. Defendant Smoak was served with a summons and the Amended Complaint in this action on September 25, 2013. Affidavit of Service, docket #28.

12.     Defendant Smoak filed an Answer and Counterclaim on October 24, 2013. Docket #42.

13.     On January 6, 2013, the District Court adopted this Court's Report and Recommendation to dismiss Smoak's counterclaims and to strike his affirmative defenses. Dockets ##55, 57.

14.     Plaintiff filed a Combined Motion to Compel Discovery Against Defendant Smoak, to Modify the Discovery Schedule, and for Attorney's Fees on March 25, 2014. Docket #60.

15.     On May 5, 2014, this Court ordered Defendant Smoak to show cause in writing by May 19, 2014 why default should not be entered against him. Docket #64. Smoak did not respond to the Court's Order, and the Clerk of the Court entered default against him on May 29, 2014. Docket #68.

16.     Plaintiff seeks statutory damages, costs and attorney's fees, and injunctive relief in this case. Docket #21.

## PROCEDURAL HISTORY

Plaintiff initiated this action on May 2, 2013 against various Doe defendants. Docket #1. On August 21, 2013, Plaintiff filed an Amended Complaint as a matter of course naming Benito Smoak and three other defendants. Docket #21. Plaintiff served a summons and the Amended Complaint upon Smoak on September 25, 2013. Docket #28. Smoak appeared at the Scheduling Conference on October 21, 2013 and was directed to file an Answer on or before October 25, 2013. Docket #38. Defendant Smoak complied and filed an Answer and Counterclaims on October 24, 2013. Docket #42. On January 6, 2014, the District Court adopted this Court's Recommendation to grant the Plaintiff's Motion to Dismiss Smoak's counterclaims and strike certain of his affirmative defenses. Docket #57.

Plaintiff submitted to Defendant Smoak its Requests for Production, Interrogatories and Requests for Admission on November 25, 2013, which would allow Smoak thirty-three days, or until December 30, 2013 to respond. *See* docket #60. When Smoak did not produce his Rule 26(a) initial disclosures or respond to Plaintiff's first set of discovery requests, Plaintiff filed a Combined Motion to Compel Discovery against Benito Smoak, to Modify the Discovery Schedule, and for Attorney's Fees on March 25, 2014. *Id*. When Defendant failed to respond to the Motion to Compel within the time set forth in D.C. Colo. LCivR 7.1(d), the Court issued an order requiring the Defendant to respond on or before April 30, 2014. (Docket # 62.) Defendant failed to respond or to request an extension of time within which to respond to the Motion to Compel.

On May 5, 2014, this Court issued an Order to Show Cause in writing no later than May 19, 2014 why this Court should not recommend entry of default for Defendant's failure to defend this action. Docket #64. Defendant Smoak did not respond to the Order to Show Cause, and Plaintiff

8

filed a Motion for Default Judgment as to Benito Smoak on May 30, 2014. Docket #69. Defendant Smoak has not responded to the present Motion for Default Judgment, and his opportunity to do so within the time set forth in D.C. Colo. LcivR 7.1(d) has expired. The Clerk of the Court entered default against Defendant Smoak on May 29, 2014. Docket #69.

## LEGAL STANDARDS

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides the authority for the District Court to enter default judgment. After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("'[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]'") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits.")); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded"). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL

437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

The Court is now sufficiently advised and recommends as follows.

## ANALYSIS

Upon review of the record, the Court recommends finding that default judgment be entered in Plaintiff's favor against Defendant Smoak pursuant to Fed. R. Civ. P. 55(b)(2).

### I.   Jurisdiction and Liability

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment). Here, the record reveals that Smoak is an individual residing at 135 South

Kendall Street, Lakewood, Colorado 80226. *See* docket #28. As such, the Court has personal jurisdiction over Smoak. In addition, this is a copyright infringement case, and the federal courts have original jurisdiction in such cases. *See* 28 U.S.C. § 1338. The Copyright Act creates a cause of action in favor of the owner of a copyright for direct infringement. 17 U.S.C. § 501.

Furthermore, taking its allegations as true, Plaintiff has established a violation of its copyrighted work by Smoak, in that a computer at Smoak's residence participated in an illegal download of Plaintiff's motion picture. A plaintiff is entitled to a determination of liability unless it has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof. *Weft, Inc.*, 630 F. Supp. at 1143. Here, Plaintiff alleges the following summarized claims:

- Defendant installed BitTorrent client software onto a computer to serve as the interface during the downloading/uploading process. First Amended Complaint, Docket #21, at ¶ 42.

- Defendant visited a torrent site that contained an index of files being made available by other users for copying and downloading. *Id.* at ¶¶ 43-44.

- Using the BitTorrent protocol, Defendant then joined a BitTorrent swarm where he downloaded the Motion Picture from and uploaded the Motion Picture to the other members of the swarm. *Id.* at ¶ 47.

- Thus forming part of a BitTorrent swarm, Defendant participated in the process by which the Motion Picture was broken up into many pieces and distributed amongst the swarm members, resulting in the rapid viral sharing of the file throughout the collective peer users. *Id.* at ¶¶ 51-52.

- Through use of the BitTorrent protocol, Defendant republished and duplicated Plaintiff's Motion Picture in an effort to deprive Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act. *Id.* at ¶ 61.

- Defendant's acts of infringement were willful, intentional, in disregard of and with indifference to the rights of Plaintiff. *Id.* at ¶ 66.

Motion, docket #69 at pp. 5-6.

...
...
...
...
...

There are two elements to a copyright infringement claim: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). The plaintiff bears the burden of proof on both elements. *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005)).

Here, Plaintiff alleges it owns the copyright to the subject motion picture, and provides the registration number, publication date and registration date for the film. Docket ##21 and 21-2. The Court takes Plaintiff's well-pleaded allegations as true.

For the second element, Plaintiff must prove that Smoak "'unlawfully appropriated protected portions of the copyrighted work.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that [Smoak,] as a factual matter, copied portions of Plaintiff's work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002).

"A plaintiff can indirectly prove copying (in a factual sense) 'by establishing that a defendant had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77.F3d 1280, 1284 (10th Cir. 1996)). "A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting

*Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007)).

Once copying has been established, "'liability for copyright infringement will attach only where protected elements of a copyrighted work are copied.'" *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284). "The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.*

In this case, Plaintiff has sufficiently alleged that Smoak copied its protected work by demonstrating, through verified testimony, that its investigator downloaded from Smoak's IP address a copy of the Hash 840D from the BitTorrent file distribution network (accessed by Smoak) and confirmed through independent review that the file hash matched Plaintiff's copyrighted work. Plaintiff's investigator then verified that the downloaded file contained a "substantial portion" of Plaintiff's copyrighted film. Thus, Plaintiff contends that on or about February 5, 2013, Smoak installed BitTorrent client software onto a computer to serve as the interface during the downloading/uploading process, visited a torrent site that contained an index of files being made available by other users for copying and downloading, and using the BitTorrent protocol, Smoak then joined a BitTorrent swarm where he downloaded the copyrighted film from and uploaded the film to the other members of the swarm. Taking these well-pled allegations as true, the Court finds

that Plaintiff has established that Smoak copied Plaintiff's copyright protected work and recommends that the District Court find Smoak has committed a direct infringement of the Copyright Act against Plaintiff as set forth in Count I of the Amended Complaint.

Plaintiff also asserts a claim for contributory infringement. Plaintiff alleges that Smoak participated in a BitTorrent "swarm" with other peers to cause the infringement of its copyrighted film by other Defendants and swarm members. Taking as true Plaintiff's allegations concerning Smoak's actual access to Hash 840D, the Court finds that he and at least one other Defendant accessed the file on the same date [*see* docket #21-3] and, thus, the allegations demonstrate a plausibility that Smoak participated with that Defendant in the same BitTorrent swarm. *See Patrick Collins, Inc.*, 2013 WL 359759, at *2 ("to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier))." Accordingly, the Court recommends that the District Court find the Plaintiff has demonstrated Defendant Smoak's liability as to contributory infringement as set forth in Count II of the Amended Complaint.

**II.     Damages**

Here, Plaintiff seeks statutory damages and costs for the February 5, 2013 copyright infringement. Under federal copyright law, "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Damages may be increased to up to $150,000 if the infringement is willful. 17 U.S.C. § 504(c)(2).

In this case, Plaintiff seeks $2,250.00 on the basis of its allegation of willful infringement.

Plaintiff also seeks proportionate attorney's fees and costs, in the amount of $1,047.50.[2] These are also authorized under the statute. *Id.* § 505. Finally, Plaintiff seeks a permanent injunction, pursuant to 28 U.S.C. § 502, enjoining Smoak from:

> from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture [], including without limitation by using the Internet to reproduce or copy Plaintiff's Motion Picture, to distribute Plaintiff's Motion Picture, or to make Plaintiff's Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Each Defendant shall also destroy all copies of Plaintiff's Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of the downloaded Motion Picture transferred onto any physical medium or device in each Defendant's possession, custody, or control.

Docket #21 at 18. Notably, 17 U.S.C. § 503(b) provides that "the court may order the destruction ... of all copies ... found to have been made or used in violation of the copyright owner's exclusive rights."

This case is one of dozens of its type filed in this District and handled by me as Magistrate Judge. It is also one of hundreds or perhaps thousands filed around the country in recent years by Plaintiff and other owners of pornographic films. Many of the defendants named in these lawsuits settle very early in the case. Some of those who do not settle have denied any participation in copyright infringement. Other defendants allege that their wireless connection may have been used by someone else to participate in the alleged swarm against Plaintiff's protected movie.

However, in this case, there is no evidence that anyone other than Smoak committed the

---

[2] Plaintiff claims it has incurred costs in the amount of $207.50 and attorneys' fees in the amount of $840.00. Declaration of Sarah Burns, May 30, 2014 ("Burns Declaration"), ¶¶ 16, 17, docket #70.

infringements, and evidence exists of his infringement. Despite being informed both before and during this litigation of the allegations against him, Smoak has failed to answer or otherwise defend himself in this case. For these reasons, I believe that Plaintiff has established entitlement to willful infringement damages.

Furthermore, courts across the country have awarded $2,250.00 per infringement in cases of this type, and I have awarded that amount in cases nearly identical to this one. Thus, I find that a statutory damage award of $2,250.00 per infringement is appropriate and just in this case to accomplish the intent set forth by Congress in passing the Copyright Act. In addition, Plaintiff's request for $1,047.50 for attorney's fees and costs should be granted.

Finally, Plaintiff seeks injunctive relief prohibiting Smoak from infringing Plaintiff's copyrighted work and requiring Smoak to delete the torrent file relating to Plaintiff's movie from each computer in Smoak's possession, custody or control, and to delete any actual copy of Plaintiff's copyrighted work from such computers. The Court finds that Plaintiff's request for an order directing Smoak to "destroy all copies of Plaintiff's Motion Picture" from "any computer hard drive or server without Plaintiff's authorization" that are within Smoak's "possession, custody, or control" is a reasonable request and should be granted.

However, Plaintiff has failed to proffer evidence sufficient to justify its request to enjoin Smoak "from directly or indirectly infringing Plaintiff's rights in the copyrighted motion picture"; Plaintiff has produced no evidence that, as of this date, Smoak actually possesses the copyrighted work on his computer(s) and continues to upload it to others. The Court notes that, if the District Court were to grant Plaintiff's requested injunction for the deletion of Plaintiff's copyrighted work on Smoak's computer(s), he would be unable to continue uploading the work via the BitTorrent

system. Therefore, the Court recommends that the District Court deny Plaintiff's request for an order enjoining Smoak from directly or indirectly infringing on Plaintiff's copyrighted work.

## CONCLUSION

Based on the foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the District Court **GRANT IN PART AND DENY IN PART** Plaintiff's Motion and Memorandum for Default Judgment against Defendant Benito Smoak [filed May 30, 2014; docket #69] as follows:

1. Enter judgment in Plaintiff's favor against Defendant Benito Smoak for direct copyright infringement of Plaintiff's copyrighted work and contributory infringement, as set forth in Counts I and II of the Amended Complaint;

2. Order Smoak to pay to Plaintiff the sum of $2,250.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $1,047.50 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

3. Order Smoak to permanently destroy all the digital media files relating to, and copies of, Plaintiff's copyrighted work made or used by him in violation of Plaintiff's exclusive rights, as well as all master copies in his possession, custody or control from which such copies may be reproduced; and

4. Deny Plaintiff's request for "entry of preliminary and permanent injunctions providing that [Smoak] shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture."

Dated at Denver, Colorado, this 26th day of June, 2014.

                              BY THE COURT:

                              */s/ Michael E. Hegarty*

                              Michael E. Hegarty
                              United States Magistrate Judge